UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

NOT FOR PUBLICATION

LETTER OPINION AND ORDER

June 28, 2005

**VIA ELECTRONIC FILING**
Eric Martin Bernstein, Esq.
Philip G. George, Esq.
Eric M. Bernstein & Associates, L.L.C.
Two North Road
P.O. Box 4922
Warren, NJ 07059

William D. Manns, Esq.
Law Office of William D. Manns, Esquire
21 Court Street
Newark, NJ 07102

Reed C. Kleinle, Esq.
Mets & Schiro, LLP
165 Washington Street
Morristown, NJ 07960

  Re: **Halpern, et al. v. Township of Irvington, et al.**
     **Civil Action No.: 01-4732; 01-6109 (JLL)**

Dear Counsel:

  Presently before this Court is Defendant Township of Irvington ("Township") and Defendant Sara Bost's ("Bost") (collectively "Defendants") motion for summary judgment, pursuant to Fed. R. Civ. P. 56(c), in this consolidated matter. The Court has considered the papers submitted by the parties, as well as the oral argument of the parties held on April 26, 2005. For the reasons set forth below, this Court concludes that Defendants' motion for

summary judgment is DENIED in part and GRANTED in part.

## BACKGROUND FACTS

This action involves nine Caucasian police officers who were placed on eligible lists for promotions in the Defendant Township. The Complaint alleges that they did not receive their promotions because the eligible lists were permitted to expire for racially discriminatory reasons. As the facts of this case have already been set out in the parties papers, the Final Pretrial Order ("FPTO"), and on the record during oral argument on April 26, 2005, the facts need not be reiterated in full for purposes of the present motion. The relevant material facts, however, will be discussed below and in more length in the legal discussion.

The primary issue before this Court is whether there is any question of material fact as to whether Plaintiffs, Barry Halpern, Sean Halpern, Joseph Mustacchio, Dominic Mercandante, Donald McDougall, William Edgar, George Venturi, Robert Powers, and Jeanne Johnson (collectively "Plaintiffs") can prove that the eligibility lists, for promotion of senior police officers in the Township of Irvington, were allowed to expire due to racial animus.

**A.    Undisputed Material Facts**

It appears from the FPTO that the following facts are undisputed. Plaintiffs are all caucasion police officers that are employed by the Township of Irvington. Defendant Sara Bost was the Mayor of the Township between July 1994 and July 2002. Robert Rankin was the Police Director of the Township from October 1998 through October 2000. Defendant Bost and former Director Rankin are African-American. Pursuant to Township Ordinances, the Mayor, with the consent of the Township Council, is the appointing authority for police officers in the Township, which includes promotions. In making appointments off of the eligible lists, the rule of three was not used, rather the Township went straight down the list in numerical order. (FPTO at 6, ¶11).

Under state civil service law and regulations N.J.A.C. § 4A:4-3.3 the said promotional lists set forth in Parts 3(f-h) are valid for three years from the date of their promulgation. (FPTO at 6, ¶9). These lists may be extended for good cause, but no list shall have a duration of over four years under N.J.A.C. § 4A:4-3.3(a)(1). (Id.).

Plaintiffs had the necessary education, experience, and qualifications for promotion to the next highest rank. (FPTO at 9, ¶28). Plaintiffs had taken and passed the necessary test and were placed on New Jersey Department of Personnel ("DOP") eligible lists for promotions and awaited promotion to the next highest rank. (FPTO at 9, ¶29). The DOP promotional lists expired prior to the promotion of Plaintiffs. (FPTO at 9, ¶30).

Plaintiff Robert Powers was placed on a list of eligibles for promotion to the rank of sergeant on July 16, 1997. The order of certification for Powers was 20. Fifteen on the list of eligibles were promoted in numerical order. The list had an expiration date of July 16, 2000. A new list came out on June 26, 2001 from which nine officers were promoted to sergeants on June 29, 2001. (Def. Ex. 21). Powers did not appear on this list.

Plaintiffs Barry Halpern, Sean Halpin, Joseph Mustacchio and Dominic Mercandante were placed on a list of eligibles for promotion to police lieutenant on February 26, 1996. (FPTO at 5, ¶6). The order of certification for each plaintiff was as follows: Halpern (12); Halpin (5); Mustacchio (7); Mercandante (13). (Id.). The list had an expiration date of Febraury 26, 1999. (Id.).

Plaintiffs Donald McDougall, Jeanne Johnson and William Edgar were placed on a list of eligibles for promotion to police captain on January 23, 1997. (FPTO at 5-6, ¶ 7). The order of certification for each plaintiff was as follows: McDougall (2); Johnson (3); Edgar (5). (Id.). The list had an expiration date of January 22, 2000. (Id.). Only one appointment was made from this list.

Plaintiff George Venturi was placed on a list of eligibles for promotion to deputy police chief on December 18, 1997. (FPTO at 6, ¶ 8). The order of certification for Venturi was 2. The list had an expiration date of December 18, 1997. (Id.). Only one appointment was made from this list.

Two of the Plaintiffs were eventually promoted by the DCA on May 9, 2003. (FPTO at 7, ¶18).

On July 6, 1999 Irvington Police Chief Steven Palamara wrote to the DOP and requested an extension of the lists for police lieutenant and police captain for the Irvington Police Department. (FPTO at 6, ¶12). In July 1999, the Plaintiffs' collective bargaining unit requested that Mayor Bost write the DOP requesting an extension of the eligibility lists. (FPTO at 7, ¶17). Although the FPTO indicates that it is undisputed that Mayor Bost did not request the extensions, (id.), Defendants' brief asserts that on "September 26, 1999 the Township wrote and requested the waiver" which was ultimately denied in February 2000, (Def. Brief at 24; Def. Ex. 14). By resolution adopted pursuant to the Special Municipal Aid Act, N.J.S.A. 52:27D-118.24, et seq., the Township of Irvington was placed under the jurisdiction of the New Jersey Department of Community Affairs ("DCA"), Local Finance Board, on September 29, 1999 for a period of three months. (FPTO at 6, ¶13). The resolution was readopted on December 8, 1999 for an additional three months -- on March 8, 2000 for an additional three months -- and on June 22, 2000 without an expiration date. (Id.).

Pursuant to this Act, all hiring and promotions in the Defendant Township were subjected to a wage and hiring freeze. (FPTO at 7, ¶14). The Defendant Township, however, could apply for waivers of the wage and hiring freeze. (FPTO at 7, ¶15).

For positions other than Lieutenant and Captain, the Township applied for waivers of the wage and hiring freeze between October 1999 and January 2001 that were not granted. (FPTO at 7, ¶16).

There is an organization known as the "Golden Shields" that is an organization of African American police officers in the Township of Irvington. (FPTO at 8, ¶19). The organization is not affiliated with the Defendant Township of Irvington or the Irvington Police Department. (Id.). Around late November or early December 1999, former Irvington Director of Police Robert Rankin gave a speech to the Golden Shields organization wherein he exhorted African-American officers to try harder to place higher on eligibility lists so that there would be more supervisory officers of African American descent so as to "level the playing field." (FPTO at 8, ¶21). He also criticized the Police Department on several grounds, including racism and disparity in promotion of African American officers, inefficiency, poor response time, poor complaint taking procedures, poor management and poor Internal Affairs operation. (Id.). He also used terms of racial connotation including "white boys" and "crackers." (Id.). Rankin outlined his plan for reform of the Irvington Police Department and answered questions from the floor. (Id.). An unknown person tape recorded the speech and the speech was transcribed by unknown persons and circulated in and about the Irvington community, including Plaintiffs. (Id.).

On December 3, 1999 Junius Williams, Esq., Township Attorney and an African American, wrote a memorandum to Defendant Bost summarizing the Rankin Golden Shields speech. (FPTO at 8, ¶22). Williams concluded that there was nothing improper about his observations or commitment to change, but also concluded that some language was intemperate. (Id.). On that same date, apparently after a meeting with Defendant Bost and Williams, Rankin issued an apology for the use of some language that was offensive to some members of the Irvington Police Department. (FPTO at 8, ¶23).

Mayor Bost made promotions on February 28, 1998, June 15, 1998, June 30, 1998, June 29, 2001, and April 11, 2002. (FPTO at 10, ¶32). No appointments to the ranks of lieutenant or captain

occurred in 2001 or 2002. (Id.).

Irvington Mayor Wayne Smith made promotions on May 9, 2003. (FPTO at 10, ¶33). During these promotions, plaintiff McDougall was promoted to Captain and plaintiff Halpin was promoted to Lieutenant. (FPTO at 7, ¶18).

**B.   Disputed Material Facts**

Although there are no clear first-hand accounts of racist statements regarding promotions and the requests for waivers, Palamara's affidavit does raise some significant disputed material facts that were not contradicted by Defendants. These facts raise questions as to Defendants' motivations that, if believed by a jury, could permit a jury to make the inferential leap to concluding that Defendants did not request waivers or extend the eligibility lists so that Caucasian officers would not be promoted. Some such facts in Palamara's affidavit include:

- On June 15, 1998, Mayor Bost promoted an African-American, Captain Michael Chase, to Deputy Chief and a Caucasian, Scott Hildebrand, to Captain. (Palamara Aff. ¶ 1).
- "Bost stated that, if she didn't promote Chase, the Black community would string her up." (Palamara Aff. ¶ 2).
- "With regard to the status of her search for a Police Director, Mayor Bost stated that whoever it is, it's going to be an African-American." (Palamara Aff. ¶ 4).
- Robert Rankin was selected to be Police Director in October 1998, and he is African-American. (Palamara Aff. ¶ 5).
- "Bost and Rankin had a desire and intention to advance African-American officers." (Palamara Aff. ¶ 16).
- "Bost, Rankin, and/or the Township waited over a year after the applicable promotional list expired before requesting the next sergeant's test, at which time" two Golden Shields representatives and close friends with the Mayor were able to take the test and be promoted on June 29, 2001. (Palamara Aff. ¶25).
- "Rankin, Bost, and/or the Township did not comply with Department of Community Affairs procedures, requirements, or requests, thereby failing to obtain Department of Community Affairs allocation or funding for the promotions at issue." (Palamara Aff. ¶ 26).
- "The Mayor could have extended the promotion lists, or made promotions before the promotion lists expired, but did not, despite the requests of plaintiffs and others."

(Palamara Aff. ¶ 29).

**C.	Procedural History**

In the case at hand, Plaintiffs commenced these two consolidated actions in October and December 2001, and Defendant's motion for summary judgment was filed in September 2004 seeking dismissal of Plaintiffs Complaint in its entirety.[1] The parties have conducted discovery, the Final Pretrial Order has been filed, and this matter is ready for trial.

## LEGAL STANDARDS

**A.	Summary Judgment**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once the moving party has met its burden, it is incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not significantly probative," the court should enter summary judgment in favor of the moving party. Anderson, 477 U.S. at 249-50.  In other words, the non-moving party must "'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir. 1996) (quoting Celotex

---

[1] Oral argument was held on April 26, 2005 and the Court reserved decision.

Corp., 477 U.S. at 322). Further, in determining whether there remain any actual issues of factual dispute, the court must resolve all reasonable doubts in favor of the nonmoving party. Matsushita, 475 U.S. 574; Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The Supreme Court has held that there is "no genuine issue as to any material fact," where there is a "complete failure of proof concerning an essential element of the nonmoving party's case" because all other facts are rendered immaterial. Celotex Corp., 477 U.S. at 323. Therefore, the "moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

**B.**     **Race Discrimination**

A plaintiff alleging racial discrimination is subject to the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 798 (N.J. 1990); Baker v. Nat'l State Bank, 711 A.2d 917, 925 (N.J. Super. Ct. App. Div. 1998). The plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. In order to establish a prima facie case a plaintiff "'must demonstrate that the defendant's conduct (1) would not have occurred but for [his] race; and the conduct was (2) severe or pervasive enough to make a (3) reasonable African-American

believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" Watkins v. Nabisco Biscuit Co., 224 F. Supp. 2d 852, 863 (D.N.J. 2002) (quoting Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. 1998)).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, non-retaliatory reason for the employment decision." Lombardi v. Cosgrove, 7 F. Supp. 2d 481, 497 (D.N.J. 1997) (citing Jamison v. Rockaway Twp. Bd. of Educ., 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990)); Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995). If the employer provides such a reason, the plaintiff must show that a discriminatory intent motivated the employer's decision. Lombardi, 7 F. Supp. 2d at 497; Jamison, 577 A.2d at 182. "To defeat summary judgment when the defendant answers plaintiff's prima facie case with legitimate, nondiscriminatory reasons for its actions, plaintiff must point to evidence from which a fact finder could reasonably either '(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 619 (D.N.J. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). Specifically, "the plaintiff must 'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'" Id. (quoting Fuentes, 32 F.3d at 765).

**DISCUSSION**

The key allegation in the Complaint alleging section 1981 and 1983 claims is that "[n]otwithstanding the staff openings, on or about December 25, 1999, defendant Mayor Bost, acting

Page 9 of 14

for personal motives and on behalf of Irvington, allowed the promotion lists to lapse because she wanted to promote black men to the openings." (Halpern Compl. ¶ 23; Powers Compl. ¶ 17). Defendants move for summary judgment arguing that in order to succeed at trial, Plaintiffs are going to have to prove that the eligibility lists would have been extended, but for racial animus, and that waivers could have been obtained from the DCA, but for racial animus by Defendants, and that Plaintiffs would have been next in line on the lists to be promoted.

Although in opposition to this motion Plaintiffs rely solely on the affidavit of Steven Palamara, current Deputy Chief in the Township of Irvington Police Department and former Chief of Police from June 1997 to March 2002; a page of deposition transcript of Robert Rankin, Police Director; Rankin's speech at the Golden Shields meeting; and the pleadings -- this Court finds that Plaintiffs have demonstrated questions of material fact as to the essential elements of their claims.

Palamara stated in his unrebutted affidavit that "[Mayor] Bost and [Director] Rankin had a desire and intention to advance African-American officers." A jury could believe that this demonstrated that they were racially discriminatory against the Caucasian officers. In addition, Palamara states:

- "Bost stated that, if she didn't promote Chase, the Black community would string her up." (Palamara Aff. ¶ 2).
- "With regard to the status of her search for a Police Director, Mayor Bost stated that whoever it is, it's going to be an African-American." (Palamara Aff. ¶ 4).
- "Bost, Rankin, and/or the Township waited over a year after the applicable promotional list expired before requesting the next sergeant's test, at which time" two Golden Shields representatives and close friends with the Mayor were able to take the test and be promoted on June 29, 2001. (Palamara Aff. ¶25).
- "Rankin, Bost, and/or the Township did not comply with Department of Community Affairs procedures, requirements, or requests, thereby failing to obtain Department of Community Affairs allocation or funding for the promotions at issue." (Palamara Aff. ¶ 26).
- "The Mayor could have extended the promotion lists, or made promotions before the

promotion lists expired, but did not, despite the requests of plaintiffs and others." (Palamara Aff. ¶ 29).

While this evidence is minimal, it does raise questions of fact that permit this case to go to a jury. Whether Rankin's speech to the Golden Shields group contained inflammatory or racist remarks sufficient to support the conclusion that racism prevented the promotion of Plaintiffs, or whether Palamara's testimony will be credible so as to convince a jury that racism prevented the promotion of Plaintiffs, are issues not properly before this Court on a summary judgment motion. See Anderson, 477 U.S. at 249 (stating it is not for the judge to weigh the evidence and determine its truth, but to determine if there are genuine issues for trial).

Defendants also argue that the Plaintiffs failed to exhaust their administrative remedies and that the Plaintiffs lack standing to challenge the appointment process. The Court is not persuaded by either of these arguments. As Plaintiffs correctly assert, where their claims are for violations of their civil rights, under 42 U.S.C. §§ 1981 and 1983, there is no requirement that Plaintiffs pursue or exhaust administrative remedies. Matzner v. Brown, 288 F. Supp. 608, 611 (D.N.J. 1968) ("It is recognized that the right to assert a claim under the Federal Civil Rights Act in a federal court is not dependent upon exhaustion of state remedies."); see also Wilkinson v. Dotson, __ U.S. __, 125 S. Ct. 1242, 1246 (2005) (§ 1983 does not require a petitioner to exhaust state remedies).

As for Defendants' challenge to Plaintiffs' standing, it is evident that Plaintiffs do have standing to bring § 1981 and § 1983 claims by the mere fact that they are Caucasian and they are alleging racially motivated discrimination. In Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the Court articulated that a claim for failure to promote for discriminatory reasons was actionable under 42 U.S.C. § 1981. Whether Plaintiffs will be able to prove to a jury that they would have been able to be appointed, considering their individual place on the eligibility list, is not

relevant to standing. It is also irrelevant that Plaintiffs did not have a vested right to appointment. Nunan v. N.J. Dep't of Personnel, 582 A.2d 1266, 1268 (N.J. Super. Ct. App. Div. 1990) ("'[A] person who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment.'") (quoting In re Crowley, 473 A.2d 90, 97 (N.J. Super. Ct. App. Div. 1984). "The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list," and that person has only an "expectancy interest in the position." In re Crowley, 473 A.2d at 97. Rather, the protectable interest that Plaintiffs have is in equality of rights as between different races. Questions of fact remain as to whether Plaintiffs were entitled to be promoted and whether any failure to promote was the result of racial bias.

The Court is persuaded, however, by Defendants' argument that the revival of the eligibility lists, under N.J.S.A. 11A:4-6,[2] N.J.A.C. § 4A:4-3.3,[3] or N.J.A.C. § 4A:4-3.4,[4] is a matter for the

---

[2]N.J.S.A. § 11A:4-6 provides:

> The commissioner shall set the duration of an eligible list, which shall not be more than three years from the date of its establishment, except that it may be extended by the commissioner for good cause and a list shall not have a duration of more than four years. Notwithstanding the duration of a list, the commissioner may revive a list to implement a court order or decision of the board or commissioner in the event of a successful appeal instituted during the life of the list or to correct an administrative error. The commissioner may revive a list to effect the appointment of an eligible whose working test period was terminated by a layoff.

[3]N.J.A.C. § 4A:4-3.3 provides in relevant part:

> (a) Open competitive and promotional lists shall be promulgated for three years from the date of their establishment, unless the Commissioner determines that, under the circumstances, a shorter time period is appropriate.
>
> 1. An eligible list may, for good cause, be extended by the Commissioner prior to its expiration date, except that no list shall

Department of Personnel and is not an available remedy in this federal action. Plaintiffs cite N.J.A.C. § 4A:4-3.4(a)(5) as support for their argument that the District Court has authority to revive the eligible lists "[f]or other good cause." However, Plaintiffs fail to cite to any case law which supports such an interpretation or even an application of subsection (a)(5). Furthermore, the New Jersey Supreme Court has stated that "[t]he decision to extend an eligibility list within statutory limitations entails an evaluation of how best to provide competent and effective governmental service; it is peculiarly within the expertise of the Commission [now the Department of Personnel]."

---

have a duration of more than four years.

2. The name of any employee shall not remain on a regular reemployment list for more than three years from the date of resignation, except as provided in (a)(1) above.

\* \* \*

(b) The Commissioner may, in cases of fraud, illegality, test invalidity, error by the Department or other good cause, cancel an eligible list prior to its expiration date by issuing an order, which shall provide a means for the notification of eligibles. . . .

[4]N.J.A.C. § 4A:4-3.4 states:

(a) The Commissioner may revive an expired eligible list under the following circumstances:

1. To implement a court order, in a suit filed prior to the expiration of the list;

2. To implement an order of the Commissioner or Board in an appeal or proceeding instituted during the life of the list;

3. To correct an administrative error;

4. To effect the appointment of an eligible whose working test period was terminated by a layoff; or

5. For other good cause.

Malone v. Fender, 402 A.2d 240, 245-46 (N.J. 1979).  The Court, therefore, dismisses any remedy seeking the revival of the expired eligibility lists.

In conclusion, whether Plaintiffs had a right to be considered for appointment, but for racially discriminatory reasons, and that Defendants chose to allow the eligibility lists to lapse and not request waivers for the promotion of Caucasian officers, is a matter best left for trial.

## **CONCLUSION**

For the reasons set forth above, it is on this 28th day of June, 2005,

**ORDERED** that Defendants' motion for summary judgment [36] is GRANTED solely as to the dismissal of any claim for the revival of the expired eligibility lists and DENIED as to the remaining claims; and it is further

**ORDERED** that the parties shall contact my Deputy Clerk, Lissette Rodriguez, to schedule a trial date for this matter.

                                                /s/ Jose L. Linares
                                                JOSE L. LINARES, U.S.D.J.

DATED: June 28, 2005